(118 App. Div. 633)

### PRATT v. CLARK et al.

(Supreme Court, Appellate Division, First Department. April 5, 1907.)

SPECIFIC PERFORMANCE—CONTRACTS ENFORCEABLE.

    A lessee agreed to assign on condition that the assignee obtained a lease from trustees of the deceased owner. The trustees and beneficiaries under the will of the deceased owner consented to the lessee's assignment and the trustees agreed to execute a lease. The assignee claimed that the trustees were unable to execute a valid lease. He was notified that at a specified time the agreements would be performed, but he failed to perform his part thereof, though he had reasonable time to do so. *Held* that, on the assignee's failure to perform, the agreements could be declared at an end, so as to deprive him of the right to specifically enforce them.

Appeal from Special Term, New York County.

Action by Tracy W. Pratt against William I. Clark and others, executors of Charlotte M. Goodridge, deceased, and others. From a judgment for defendants (98 N. Y. Supp. 700), plaintiff appeals. Affirmed.

Argued before PATTERSON, INGRAHAM, LAUGHLIN, LAMBERT, and HOUGHTON, JJ.

Samuel Untermyer, for appellant.

Albert Stickney, for respondent executors.

Albert Stickney, Jr., guardian ad litem, for infant respondents.

INGRAHAM, J. This action was for the specific performance of a contract by which the defendant Todd agreed to assign and convey

to the plaintiff certain leasehold property in the city of New York. The agreement was dated July 16, 1904, and was between the defendant Louis L. Todd, party of the first part, and Tracy W. Pratt (plaintiff), party of the second part. This agreement recited that the executors of Charles M. Goodridge, by an instrument dated May 1, 1902, had leased to Todd certain lots of land on the northwest corner of Thirty-Sixth street and Broadway, in the city of New York, the term of which lease extended up to the 1st day of May, 1907, and which lease contained certain covenants as to renewals—the said lease being in effect a modification and extension of certain other leases and agreements, the first of which took effect on or about May 1, 1886, and also two other leases of adjoining property, and it being intended that all of the rights, property, powers, privileges, interests, and estate of the party of the first part, whether as lessee, assignee, or otherwise, under or in any of the aforesaid leases or agreements or other instruments in relation to the whole or any part of said property above referred to, and any rights thereunder or in connection therewith, shall be comprehended in and be, so far as is necessary or proper, included in and passed by this instrument; that the party of the first part had erected or caused to be erected the buildings now on said premises, and owns the same, together with the fixtures therein and thereto annexed, and has certain rights, estates, and privileges in connection therewith, and owns the personal property, being the furniture and all personal property contained therein or connected therewith, and used in, or convenient for use in connection with, his business as proprietor of the Marlborough Hotel; and also recites that the party of the first part controls all the rights, property, and interest of the said lessee mentioned. The agreement provided that the party of the first part, in consideration of the sum of $400,000, agrees for himself, his heirs, executors, administrators, and assigns, to sell, assign, transfer, convey, and deliver, or cause to be sold, assigned, transferred, conveyed, and delivered, unto the party of the second part, his heirs, executors, administrators, and assigns, the said Goodridge, Everhart, and Bradley leases, and· the property, estate, rights, and interests covered thereby, or any of them, including any claim in connection with the assessments or taxes of 1899 and 1900, together with the building or buildings erected on the Goodridge property, and all the machinery, fixtures, furniture, and personal property of every kind and nature, of the Marlborough Hotel; and the party of the second part (plaintiff) agreed, in consideration of the said assignment, transfer, sale, delivery, and conveyance, to pay to the party of the first part, his executors, administrators, or assigns, the sum of $400,000—$200,000, by assuming or causing to be assumed·two mortgages upon the Goodridge property, and the further sum of $200,000 as follows: In bonds of a hotel company by a mortgage as in said agreement thereafter described, the sum of $50,000 in said bonds; by the party of the second part paying or assuming to the satisfaction of the holders of the Goodridge, Everhart, and Bradley leases any rentals, taxes, assessments, water rates, interest, or other sums that may be due under or on such leases; and the balance of the said $200,000 to be paid to the party of the first part in cash at the time of the execution of the conveyance, assign-

ment, transfer, and delivery of the property and business above referred to and the passing of the title thereof. It was further understood that the party of the second part proposed to take over or cause to be taken over the said hotel, leases, property, and business to and into the name of a corporation to be duly formed under the laws of the state of New York which shall be satisfactory to the said Clark and Iselin, trustees, and that the said corporation will issue bonds and a mortgage upon the above-mentioned leases and its right and title therein, and upon all the buildings, etc., acquired by it, subject only to the liens and incumbrances as above set forth, the said mortgage and bonds not to exceed in amount the sum of $200,000. The agreement was then conditioned upon the party of the second part, his executors, administrators, or assigns, obtaining from the owners of the Goodridge property such a lease, or agreement for such a lease, to commence May 1, 1907, and to extend for 21 years, at the annual rental of $45,000, payable monthly in advance, with the taxes, assessments, etc.; that the assignment of the said leases and other papers necessary or proper to carry out this agreement were to be executed and delivered on the 8th day of September, 1904; interest, rent, and premiums on insurance policies to be adjusted and paid as the interests of the several parties might appear. The time for the completion of this contract was extended by the consent of the parties from time to time to the 3d day of November, 1904. In the meantime a question had arisen as to the power of the trustees of Goodridge to make a lease which would continue for the period that the leases and renewals thereof were to continue. Negotiations were had with the trustees of Goodridge's estate, who were willing to give a new lease; but, in consequence of the question as to their power to lease, the plaintiff was not willing to complete the transaction until such a new lease had been authorized, or the old lease which the plaintiff undertook to transfer had been validated by some judicial proceeding; and there was evidence tending to show that the executors of Goodridge had agreed to commence some proceeding which would validate the lease or authorize a new lease for the term that the plaintiff desired.

On the 29th day of September, 1904, an agreement was executed between the Goodridge trustees and the beneficiaries under the will of Charlotte M. Goodridge, consenting to the assignment of the lease by Todd, and the trustees agreeing to execute a new lease of the premises, a copy of which lease was annexed to the agreement; and it was further agreed that the assignment by Todd and the execution and delivery of the new lease should be consummated on the 17th day of October, 1904. Finally, on the 26th of October, 1904, a supplemental agreement was made between the trustees and those interested in the estate of Charlotte M. Goodridge and the plaintiff, which reaffirmed the agreement of September 29, 1904, and which also provided that, "subject to the adjustment of such details in a manner to be agreed upon by the respective attorneys named below, the final performance and closing of the contract is hereby adjourned until the first day of November, 1904, or to such other time or times as may be hereafter agreed upon by said attorneys"; and the performance of this contract was subsequently adjourned to the 3d of November, 1904. Thus the

final condition of the contract between the plaintiff and the defendant Todd, and between the plaintiff and the trustees and those interested in the estate of Charlotte M. Goodridge, both stood adjourned to the 3d of November, 1904. At that time it is conceded that the plaintiff was not ready to perform either of these contracts. No proceedings had been commenced to validate the lease, nor had the trustees received any express authority to execute a lease of the premises; and the plaintiff claimed, and was sustained by the title company to whom the question as to the validity of the lease had been submitted, that the trustees of the estate of Goodridge had no authority to execute a lease which, including renewals, would extend beyond the termination of the trust. It is evident that the plaintiff refused to complete his contract until he could get a lease that the title company would accept, and that the title company would not accept a lease for the full term, including the renewal which the Goodridge trustees and those interested in the estate could execute. At any rate, the plaintiff never did offer to complete his contract, and never was in a position to complete it. After November 3, 1904, nothing seems to have been done in relation to the carrying out of the contract, and, the time within which it was to be performed not having been extended by any agreement, the trustees of Mrs. Goodridge and those interested in her estate served a notice upon the plaintiff that they had been at all times ready to perform the agreement dated September 29th, and that they would be ready at all times to perform the agreement before the 22d of November, 1904, upon notice to them or their attorney of a time and place at which the plaintiff would be ready to perform, and that in default of such notice, they would attend at the office of their attorney on the 22d day of November, 1904, at 1 o'clock p. m., prepared and ready to perform said agreement on their part, and that, if the plaintiff did not attend at that time and perform said agreement on his part, said agreement would be terminated and at an end, and would be so considered by the undersigned. This was signed by the executors of Mrs. Goodridge and those interested in her estate by their attorneys. On November 22d the plaintiff did not perform, and on November 23d he served a notice on the trustees, in which he stated that he would be ready and able to perform said contract on his part, and was willing to do so, provided the other parties to said contract performed it on their part. He asserted that the other parties to the contract were not able at that time to perform the same on their part, and that they had not tendered on their part proper performance of said contract; and the plaintiff then demanded that the trustees and Todd take such action as should be necessary to put themselves in a position to lawfully and fully perform the said contract, and for such purpose the plaintiff offered to adjourn or postpone the closing of said contract for a reasonable time. The plaintiff, therefore, having failed to perform on the day fixed, and having claimed that the other parties to the agreement were unable to perform, the trustees and those interested in the estate of Mrs. Goodridge and Todd made a new contract with the Sweeney-Tierney Company, and the lease and hotel and other property were transferred to it.

The question in dispute necessarily depends upon the question as to

whether a transfer by Todd to the plaintiff of the leases as they existed was a compliance with this contract, or whether, in order to comply with the contract, Todd had to tender to the plaintiff a lease which would include a valid lease for the period of the various renewals provided for therein—in other words, whether there was an implied covenant that the lease and all renewals were valid, so that they could be enforced; and the plaintiff's claim on this appeal is based entirely upon the assumption that there was such an implied covenant. The contract recites the leases that were held by Todd, and it was those leases that he agreed to transfer. There was no covenant in the contract that these leases would insure to the plaintiff the continuance of the term, or that the covenants for renewals in the lease were valid and could be enforced. What Todd agreed to do was to transfer the leases that he had, and which were recited in the agreement; and what the plaintiff undertook to purchase was the leases recited in the agreement. The agreement was conditioned upon the Goodridge trustees being willing to make a new lease; but, if they were not willing or able to make a new lease, the only result would have been that the plaintiff's obligation to carry out the transaction terminated. There was no default on Todd's part in that event. Nor could the plaintiff hold Todd for a breach of the contract, if the executors were unable or unwilling to execute the new lease which the plaintiff desired. The trustees and those interested in the estate of Goodridge agreed to execute a new lease, and they were willing to execute it as provided for in the agreement between the plaintiff and Todd; but the plaintiff refused to accept such a new lease, upon the ground that the trustees could not execute a lease for a period beyond the term of their trust, and thus the question stood—the plaintiff refusing to complete because he could not get the lease that he desired, and the trustees and Todd being willing to complete, Todd to give a transfer of the leases and property which were recited in the contract, and the trustees to give the lease contemplated in the agreement. Whether or not the lease of the trustees would have been valid for a period beyond the termination of the trust, it is not necessary for us to determine. The trustees were given by the Goodridge will power to make leases, and it is not at all clear that a lease given in the exercise of that power would not have been a valid lease for such a term as the trustees saw fit to grant. But, whether or not the lease would have been good for the whole period, the offer of Todd and the trustees to perform their contract was not at all dependent upon the validity of the lease for the whole term which a renewal would insure to the lessee; and I think that on the 17th day of November the parties to these agreements had the right to require the plaintiff either to complete his contract and accept what Todd agreed to give him as a completion of the contract, or, that the contract should terminate.

It seems to me that this question is whether or not the plaintiff was, under the contract with Todd and the trustees and those interested in the Goodridge estate, bound to accept from them the transfer which they were able and ready to give, including the new lease, so that, on the execution of such transfers and conveyances and the new lease by the trustees and those interested in the Goodridge estate, Todd and the

Goodridge estate had complied with their contract. I think such a transfer and new lease were a compliance with the contract, and that the plaintiff was then in default. This being the situation, it was within the right of the trustees and Todd to insist that the plaintiff perform his contract by a day named, giving him a reasonable time to perform, and, upon his failure to perform, declare the contract at an end. The notice that was given to the plaintiff to perform on or before the 22d day of November formally took this position: That the trustees and Todd were ready and willing to perform the contracts, and they required the plaintiff to perform on his part. He made no objection to the fact that the time was not sufficient. He requested no further time, but took his stand upon the position that Todd and the estate of Goodridge were not able to perform, and that he would not accept the transfers and the new lease as a performance of the contract. Under such circumstances, it seems to me that there was no ground upon which the plaintiff could maintain an action for specific performance. There never was any question as to Todd's title to the lease, or as to his power to give a good transfer of the interest in the lease that he had; and that was all he undertook to do.

For this reason, I think the judgment appealed from should be affirmed, with costs. All concur.